UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

WHITE HAIR SOLUTIONS LLC,

        Plaintiff,

       v.                                                                            Case No. 23-C-717

GIDEON CAPITAL INVESTMENTS
& MANAGEMENT LLC, DIEGO AIZCORBE,
CHUCK WALKER, INGENUITY CONSULTING
SERVICES LLC, ROBERT PRZYBYSZ,
PETRON ENERGY II, INC., and
FLOYD L. SMITH,

        Defendants.

## DECISION AND ORDER

       Plaintiff White Hair Solutions LLC filed this lawsuit against Defendants Gideon Capital & Management LLC, Ingenuity Consulting Services LLC, and Petron Energy II Inc. and their respective agents, asserting claims under the Racketeer Influenced and Corrupt Organizations (RICO) Act, the Securities Act of 1933, and the Securities Exchange Act of 1934, as well as various state law claims. This case arises out of a loan that White Hair made to Petron. White Hair alleges that the defendants collectively schemed to induce White Hair into providing a loan to Petron secured by fraudulent carbon credits and that the loan amount has not been repaid by the defendants.

       Defendants Petron Energy II Inc. and Floyd Smith (the Petron Defendants) removed the action from Brown County Circuit Court to this court on June 6, 2023. This court has subject matter jurisdiction over White Hair's federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. On July 7, 2023,

Gideon Capital Investments & Management LLC, Diego Aizcorbe, and Chuck Walker (the Gideon Defendants) filed a motion to dismiss for lack of personal jurisdiction or, alternatively, failure to state a claim.  On July 19, 2023, Ingenuity Consulting Services LLC and Robert Przybysz (the Ingenuity Defendants) also filed a motion to dismiss for lack of personal jurisdiction or, alternatively, failure to state a claim.

## BACKGROUND

White Hair is a limited liability company organized under the laws of Wisconsin.  Petron is a Nevada corporation that sought to monetize carbon credits.  Smith is its Chief Executive Officer.  Ingenuity is a limited liability company organized under the laws of Michigan that provides consulting on business development.  As relevant here, Ingenuity provides advising on financing for hard-to-finance assets.  Przybysz is Ingenuity's managing member.  Gideon is a Florida-based financial services company that, among other things, facilitates the marketing and exchange of non-traditional assets.  Its members include Walker and Aizcorbe.

On September 29, 2021, Przybysz, on behalf of Ingenuity, sent White Hair an email asking whether White Hair would provide short-term financing for a transaction involving Gideon and Petron.  Przybysz represented that the transaction involved the monetization of carbon credits.  He explained that the carbon credits would be deposited with Global Trust Depository, which would issue a safekeeping receipt.  Przybysz stated that the safekeeping receipt and the carbon credits would serve as security for a standby letter of credit in the amount of approximately $1,000,000.  He indicated that, prior to funds being loaned against the standby letter of credit, Global Trust Depository and Petron, as the owner of the carbon credits, needed to pay for an insurance wrap.  Przybysz stated that, as a result, Petron needed a short-term loan from White Hair in the amount of $1,000,000 to pay for its share of the insurance wrap.  He indicated that there was no risk for

2

the money put up for the insurance wrap, as Global Trust Depository had purchased a surety bond to mitigate all risk.

The next day, Przybysz sent a follow-up email to White Hair, correcting his misstatement that the surety bond was being purchased by Global Trust Depository. He clarified that Gideon was purchasing the surety bond. Przybysz stated that the surety bond had already been issued for this transaction and that Gideon would assign the surety bond to White Hair.

On October 1, 2021, Przybysz forwarded to White Hair documents to validate the carbon credits owned by Petron. He emailed a redacted copy of the surety bond to White Hair on October 4, 2021. On October 5, 2021, Przybysz emailed White Hair, stating that Gideon would execute a written assignment of the surety bond to White Hair. The surety bond would guaranty both the return of the principal amount of the loan by White Hair to Petron and interest on the loan. That same day, Przybysz sent a second email to White Hair, stating that Petron would agree to secure the loan with the carbon credits as collateral.

On October 9, 2021, Przybysz emailed White Hair a Fed Ex receipt purportedly representing the transmission of the carbon credits from Petron to Global Trust Depository. On October 13, 2021, Przybysz represented that Ingenuity would agree to share up to $3,000,000 in revenue with White Hair and forwarded an executed Revenue Sharing Agreement to White Hair. The next day, Petron executed a promissory note, in which it agreed to borrow the principal sum of $1,000,000 from White Hair. Petron was to repay White Hair the principal sum borrowed as well as $2,000,000 by April 14, 2022. On October 15, 2021, Petron and White Hair entered into a security agreement, which stated Petron's obligations under the promissory note. That same day, White Hair wired $1,000,000 to a bank account held by Gideon.

3

Despite previous representations to the contrary, Gideon did not assign the surety bond to White Hair. Instead, on October 7, 2021, Gideon assigned the surety bond to Petron. *Id.* Petron refused to assign the surety bond to White Hair.

On January 26, 2022, Przybysz informed White Hair that the $3,000,000 payment would be made to White Hair the week of January 31, 2022. That payment was not made to White Hair during the week of January 31, 2022, however. On February 7, 2022, and again on February 14, 2022, Przybysz promised White Hair that payment was forthcoming. On April 5, 2022, Przybysz represented Petron's expectation that payment in full under the promissory note would occur on or before April 14, 2022. On April 12, 2022, Smith, Petron's CEO, informed White Hair that the monetization of the carbon credits did not occur. Smith did not mention or indicate that any payment would be forthcoming to White Hair.

On April 29, 2022, Przybysz, Aizcorbe, and Walker met with White Hair representatives in De Pere, Wisconsin. During the meeting, the White Hair representatives were informed that various entities performed due diligence on the carbon credits and determined them to be fraudulent. Because the carbon credits were fraudulent, the surety bond was voided, and the defendants were unable to obtain a refund of the amounts paid for the surety bond. Aizcorbe and Walker acknowledged taking possession of White Hair's $1,000,000 payment through Gideon. White Hair asserts that the defendants have not paid or returned the $1,000,000 loan payment and that it has suffered a pecuniary loss as a result of the defendants' conduct.

## ANALYSIS

### A. Lack of Personal Jurisdiction

Rule 12(b)(2) of the Federal Rules of Civil Procedure governs motions to dismiss for lack of personal jurisdiction. Although the plaintiff need not include facts alleging personal jurisdiction

in the complaint, "once the defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Curry v. Revolution Labs., LLC*, 949 F.3d 385, 392 (7th Cir. 2020) (internal quotation marks and citation omitted). In deciding whether personal jurisdiction exists, the court may rely on the complaint, affidavits, deposition testimony, exhibits, or other evidence in the record. *See Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). "When the district court bases its determination solely on written materials and not an evidentiary hearing, plaintiffs must only make a *prima facie* showing of personal jurisdiction over the defendants to survive a motion to dismiss." *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019). "[T]he plaintiff is entitled to have any conflicts in the affidavits (or supporting materials) resolved in its favor." *Purdue*, 338 F.3d at 783.

The Gideon Defendants and the Ingenuity Defendants assert that this court lacks personal jurisdiction over them. "A district court sitting in diversity has personal jurisdiction over a nonresident defendant only if a court of the state in which it sits would have jurisdiction." *Id.* at 779 (citation omitted). Under Wisconsin law, a court must conduct a two-step inquiry to determine whether it may exercise personal jurisdiction over a nonresident defendant. First, the court determines whether the defendant meets any of the criteria for personal jurisdiction under Wisconsin's long-arm statute, Wis. Stat. § 801.05. *Kopke v. A. Hartrodt, S.R.L.*, 2001 WI 99, ¶ 8, 245 Wis. 2d 396, 629 N.W.2d 662. If not, the court does not have jurisdiction, and the inquiry ends there. If the statutory requirements are met, however, the court then considers whether the exercise of jurisdiction comports with due process. *Id.* The plaintiff bears "the minimal burden of establishing a prima facie threshold showing" that both the statutory and the constitutional

5

requirements are satisfied. *Id.* (citation omitted). The court will address the personal jurisdiction arguments as to each set of defendants in turn.

### 1. The Gideon Defendants

White Hair asserts that the Gideon Defendants are subject to jurisdiction under Wis. Stat. §§ 801.05(3), (4)(a), and (5)(a)–(c) of Wisconsin's long-arm statute. Section 801.05(3) states that a Wisconsin court has jurisdiction over a person in any action "claiming injury to person or property within or without this state arising out of an act or omission within this state by the defendant." Wis. Stat. § 801.05(3). Section 801.05(4) provides that a Wisconsin court has jurisdiction over a person in any action "claiming injury to person or property within this state arising out of an act or omission outside this state by the defendant, provided in addition that at the time of the injury . . . [s]olicitation or service activities were carried on within this state by or on behalf of the defendant." § 801.05(4)(a). Finally, section 801.05(5) states that a Wisconsin court has jurisdiction over a person in any action which:

> (a) Arises out of a promise, made anywhere to the plaintiff or to some 3rd party for the plaintiff's benefit, by the defendant to perform services within this state or to pay for services to be performed in this state by the plaintiff; or
>
> (b) Arises out of services actually performed for the plaintiff by the defendant within this state, or services actually performed for the defendant by the plaintiff within this state if such performance within this state was authorized or ratified by the defendant; or
>
> (c) Arises out of a promise, made anywhere to the plaintiff or to some 3rd party for the plaintiff's benefit, by the defendant to deliver or receive within this state or to ship from this state goods, documents of title, or other things of value.

Wis. Stat. § 801.05(5)(a)–(c).

White Hair asserts that the court can exercise personal jurisdiction over the Gideon Defendants based on "the conspiracy theory of jurisdiction." Dkt. No. 27 at 4. It contends that a conspiracy existed between the Gideon Defendants, the Ingenuity Defendants, and the Petron

Defendants; and therefore, the other defendants' contacts with Wisconsin can be attributable to the Gideon Defendants to establish personal jurisdiction.

"The 'conspiracy theory' of personal jurisdiction is based on the time honored notion that the acts of [a] conspirator in furtherance of a conspiracy may be attributed to the other members of the conspiracy." *Textor v. Bd. of Regents*, 711 F.2d 1387, 1392–93 (7th Cir. 1983). There is no "independent federal 'civil co-conspirator' theory of personal jurisdiction," *Davis v. A & J Elecs.*, 792 F.2d 74, 76 (7th Cir. 1986), and Wisconsin "has not accepted the conspiracy jurisdiction theory." *Derzon v. New Oji Paper Co.*, 620 N.W.2d 482, n.2 (Wis. App. 2000). Therefore, this court must base its exercise of personal jurisdiction on the Gideon Defendants' own contacts with the forum state.

White Hair asserts that it is "patently clear" that this court may exercise personal jurisdiction over the Gideon Defendants based only on the misrepresentations Przybysz made to White Hair. Dkt. No. 27 at 10. White Hair does not, however, allege that any of the Gideon Defendants' own contacts satisfy the requirements of any provision of the long-arm statute. White Hair representatives first met with the Gideon Defendants in De Pere, Wisconsin on April 29, 2022, six months after White Hair transferred the funds in accordance with Petron and White Hair's security agreement and two weeks after the Petron Defendants' deadline to repay White Hair had passed. White Hair has not identified any contact the Gideon Defendants had with Wisconsin that satisfies the long-arm statute. Therefore, the court lacks personal jurisdiction over the Gideon Defendants.

White Hair requests leave to conduct jurisdictional discovery to develop the facts necessary to support a conspiracy. "[A] plaintiff is entitled to jurisdictional discovery if he or she can show that the factual record is at least ambiguous or unclear on the jurisdictional issue." *Andersen v.*

*Sportmart, Inc.*, 179 F.R.D 236, 241 (N.D. Ind. 1998) (citation omitted). The court concludes that the information White Hair seeks would not alter the court's personal jurisdiction analysis. Accordingly, White Hair's request for leave to take discovery is denied. For these reasons, the Gideon Defendants will be dismissed from this action for lack of personal jurisdiction.

### 2. The Ingenuity Defendants

White Hair argues that the court may exercise personal jurisdiction over the Ingenuity Defendants pursuant to Wis. Stat. §§ 801.05(3), (4)(a), and (5)(a)–(c) because Przybysz made tortious misrepresentations to White Hair and acted as a conduit of both information and legal documents between Petron, Gideon, and White Hair. The Ingenuity Defendants do not explicitly address the sections of Wisconsin's long-arm statute that White Hair invokes. Instead, they assert that they did not have any communications with White Hair regarding the Petron loan transaction, only with David Stock. They contend that, because they did not know that Stock was White Hair's principal until October 15, 2021, none of Przybysz' communications with Stock can be considered in the court's jurisdictional analysis. But the Ingenuity Defendants acknowledge that Stock is White Hair's principal. Accordingly, the court will consider the Ingenuity Defendants' communications with Stock in the jurisdictional analysis.

White Hair asserts that the Ingenuity Defendants are subject to jurisdiction under Wis. Stat. § 801.05(3). To repeat, that section provides that a Wisconsin court has jurisdiction over a defendant in any action "claiming injury to person or property within or without this state arising out of an act or omission within this state by the defendant." Wis. Stat. § 801.05(3). White Hair alleges that the Ingenuity Defendants made tortious misrepresentations to White Hair through email from September 29, 2021, to October 15, 2021. It contends that the emails were made for the purpose of soliciting White Hair to enter into various loan documents with the Petron

8

Defendants. In the emails, Przybysz asked whether White Hair would provide short-term financing for a transaction involving Gideon and Petron, stated that there was no risk for the money put up for an insurance wrap, and forwarded documents to validate the carbon credits owned by Petron. White Hair's complaint alleges that the Ingenuity Defendants' Wisconsin-directed communications were intentional misrepresentations and were part of the wrongful conduct forming the basis of White Hair's claims. The Seventh Circuit has found that injury through electronic communications satisfies Wis. Stat. § 801.05(3). *See Felland v. Clifton*, 682 F.3d 665, 679 (7th Cir. 2012) (citing *Stein v. Ill. State Assistance Comm'n*, 194 Wis. 2d 775, 535 N.W.2d 101, 105 (App. Ct. 1995) (affirming personal jurisdiction under section 801.05(3) where plaintiff had received several threatening letters from the defendant at his Milwaukee address)). In short, White Hair has established a prima facie case for personal jurisdiction under Wis. Stat. § 801.05(3). The court will next consider whether the constitutional requirements are satisfied.

The Due Process Clause of the Fourteenth Amendment allows a court to exercise personal jurisdiction over an out-of-state defendant only if that defendant has "minimum contacts" with the forum State, "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The concept of minimum contacts protects a defendant from having to litigate in a distant forum and allows the defendant to reasonably anticipate where he may be haled into court. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The primary focus of the personal jurisdiction analysis "is the defendant's relationship to the forum State." *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Fran. Cty.*, 137 S. Ct. 1773, 1797 (2017). Personal jurisdiction may either be general or specific, "depending on the extent of the defendant's contacts with the forum state."

9

*uBid, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 425 (7th Cir. 2010); *see also Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414–16 (1984).

In this case, there is no dispute that the court does not have general jurisdiction over the Ingenuity Defendants. Therefore, the court will focus its inquiry on whether it has specific jurisdiction over those defendants. Specific jurisdiction is proper only if the "defendant's suit-related conduct . . . create[s] a substantial connection with the forum State." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). "The contacts needed for this kind of jurisdiction often go by the name 'purposeful availment.'" *Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, 141 S. Ct. 1017, 1024 (2021) (citation omitted). Specific jurisdiction is appropriate when "(1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014) (internal quotation marks and citation omitted). The "mere fact that defendant's conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction." *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014) (alterations and citation omitted). Instead, the defendant's conduct and connection with the forum state must be substantial enough to make it reasonable for the defendant to anticipate being haled into court there. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). "[T]he relation between the defendant and the forum must arise out of the contacts that the defendant himself creates with the forum." *Advanced Tactical*, 751 F.3d at 801 (internal quotation marks and citation omitted).

White Hair alleges that Przybysz contacted White Hair for the purpose of soliciting it to provide financing to Petron. Przybysz and White Hair communicated about the financing through

nine emails between September 29, 2021, and October 15, 2021. Przybysz' communications related to the validity of the carbon credits and stated that there was no risk for the money put up for an insurance wrap. On April 29, 2022, after Petron failed to repay the loan, Przybysz met with White Hair representatives in De Pere, Wisconsin regarding the transaction.

Even though the majority of the communications occurred outside of Wisconsin, it is well established that personal jurisdiction may not be evaded merely because the defendant has not physically entered the forum state. *See Burger King*, 471 U.S. at 476. "The question of which party initiated or solicited a business transaction has long been considered pertinent to the constitutional propriety of personal jurisdiction in a suit arising out of the transaction." *Madison Consulting Grp. v. State of South Carolina*, 752 F.2d 1193, 1202 (7th Cir. 1985). White Hair asserts that the Ingenuity Defendants' conduct was expressly aimed at Wisconsin when Przybysz specifically solicited White Hair to provide short-term financing for the transaction. It alleges that the Ingenuity Defendants' misrepresentations were the factual and proximate cause of its injury. Resolving all factual disputes in White Hair's favor, as the court is required to do at this stage, the court concludes that the Ingenuity Defendants had sufficient minimum contacts with the state of Wisconsin, such that it can be said that they "purposely availed [themselves] of the privilege of conducting business" in the state. *Greving*, 743 F.3d at 492. These facts, taken together, demonstrate that the Ingenuity Defendants' contacts were not random, fortuitous, or attenuated, such that exercising personal jurisdiction over the Ingenuity Defendants would run afoul of the Fourteenth Amendment. *See Burger King*, 471 U.S. at 475.

The court must next determine whether "the exercise of jurisdiction would be compatible with 'fair play and substantial justice.'" *Purdue*, 338 F.3d at 781 (citation omitted). In this respect, the court must evaluate (1) the burden on the defendant; (2) the forum state's interest in

adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the underlying dispute; and (5) the shared interest of the several states in furthering substantive social policies. *Id.*

Here, the factors support the exercise of jurisdiction. Even though the Ingenuity Defendants are located in Michigan, today's world allows for relatively seamless litigation across states. Wisconsin has a strong interest in adjudicating cases arising from injuries occurring within its borders. Finally, because the defendants are located in multiple states, White Hair would be required to otherwise litigate the matter in multiple states. Litigating White Hair's claims here would be the most efficient resolution of the underlying dispute. The court concludes that exercising personal jurisdiction over the Ingenuity Defendants comports with the notions of fair play and substantial justice. In sum, this court has personal jurisdiction over the Ingenuity Defendants.

### B. Forum Selection Clause

The Ingenuity Defendants also assert that the October 15, 2021 Revenue Sharing Agreement entered into between Ingenuity and White Hair require that all disputes be brought in Kent County, Michigan. Dkt. No. 22-2. A forum selection clause is enforceable to the same extent as the usual terms of a contract and must be interpreted in accordance with general contract principles. "A forum-selection clause channeling litigation to a nonfederal forum is enforced through the doctrine of forum non conveniens." *Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 892 (7th Cir. 2018) (citing *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49 (2013)). A "'valid forum-selection clause [should be] given controlling weight in all

12

but the most exceptional cases.'" *Atl. Marine*, 571 U.S. at 63 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988)).

Under the Revenue Sharing Agreement, Ingenuity agreed to provide White Hair with the right of first refusal to participate in transactions involving the monetization of carbon credits on all future financing needs that Ingenuity would process. Dkt. No. 22-2 at 1. In exchange, White Hair agreed to provide its knowledge and financial capabilities as necessary to complete financing of the transactions. *Id.* The Agreement contains a governing law provision that states, "This Agreement shall be subject to and governed by the laws of Michigan and shall be enforced in a Court of Competent Jurisdiction in Kent County, Michigan." *Id.* at 5.

White Hair asserts that the forum selection clause has not been activated in this case because the claims in the complaint do not include a breach of the Revenue Sharing Agreement. Indeed, the Revenue Sharing Agreement governs all future transactions between White Hair and Ingenuity; it does not govern the terms of the Petron loan transaction at issue here. In short, the forum selection clause is not controlling in this case.

C. **Failure to State a Claim**

The Ingenuity Defendants further assert that White Hair has failed to state a claim against them. A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). Rule 8 requires a pleading to include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must have factual allegations that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a plaintiff is not required to plead detailed factual allegations, it must plead "more than labels and conclusions." *Id.* A simple, "formulaic recitation of the elements of a cause of action will not do." *Id.* "To

13

survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570) (internal citations and quotation marks omitted). In evaluating a motion to dismiss, the court must view the plaintiff's factual allegations and any inferences reasonably drawn from them in a light most favorable to the plaintiff. *See Yasak v. Ret. Bd. of the Policemen's Annuity & Benefit Fund of Chi.*, 357 F.3d 677, 678 (7th Cir. 2004).

The Ingenuity Defendants assert that White Hair has failed to plausibly state a claim against them. It argues that White Hair makes conclusory statements of legal elements without any support of factual allegations. The Ingenuity Defendants also assert that White Hair has failed to plead its fraud claims with particularity under Federal Rule of Civil Procedure 9. The Ingenuity Defendants do not identify the essential elements of the claims White Hair has failed to plead or support their argument with any relevant case law. Therefore, any argument regarding the legal sufficiency of White Hair's complaint is waived. *See Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived"). Reading White Hair's complaint as a whole, White Hair has pleaded facts sufficient to support its claims against the Ingenuity Defendants. Accordingly, the Ingenuity Defendants' motion to dismiss for failure to state a claim is denied.

## CONCLUSION

For the foregoing reasons, the Gideon Defendants' motion to dismiss (Dkt. No. 16) is **GRANTED**. The Ingenuity Defendants' motion to dismiss (Dkt. No. 20) is **DENIED**. Gideon Capital Investments & Management LLC, Diego Aizcorbe, and Chuck Walker are dismissed as

14

defendants for lack of personal jurisdiction. The Clerk is directed to set the matter on the court's calendar for a Rule 16 telephonic scheduling conference.

**SO ORDERED** at Green Bay, Wisconsin this 15th day of March, 2024.

s/ William C. Griesbach<br>
William C. Griesbach<br>
United States District Judge